JOSEPH WODELL *vs.* WILLIAM COGGESHALL & others.

A father, who lives apart from his wife, and suffers his son, who is a minor, to remain under the custody and care of the wife, to be supported and employed by her — or allows such son to go from him and employ himself as he pleases, and take his wages — cannot maintain an action against a third person, on a declaration averring that the defendant enticed and carried away the son from the plaintiff's own care and custody. And where a minor, thus left to the care of his mother, or thus allowed to employ himself, ships for a voyage to sea, at the request of the mother, the father cannot, by forbidding the ship-owner to take the son to sea, entitle himself to maintain an action against the ship-owner, on such declaration.

TRESPASS upon the case. The declaration alleged that the defendants enticed and seduced the plaintiff's son, Merrick Wodell, who was a minor and in the plaintiff's own care and custody, and carried him away on a whaling voyage, without the consent and against the will of the plaintiff, and detained him nine months on board the brig Taunton, of which the defendants were owners.

At the trial, before the chief justice, several questions were raised, and several points ruled, which are here omitted, as some of them were waived by the plaintiff's counsel, at the argument, and others became immaterial to the decision of the case.

The following is the report of the chief justice, so far as it relates to the points adjudged by the whole court : It was conceded by the defendants that the plaintiff's said son did go a whaling voyage in the brig Taunton, from Fall River, and that he was a minor, about sixteen or seventeen years old.

The defence relied upon was, that for several years prior to the time when the defendant, Coggeshall, shipped the plaintiff's son on board the Taunton, at Fall River, the son had not lived with or been supported by his father ; that the father and mother had lived separate and apart from each other ; that the mother, with some of her children, was employed in a factory ; that the son in question had made it his home with his mother ; that she found it difficult to control him ; that at her solicitation, he was sometimes employed in factories, but soon ran away and got into

mischief ; that he was of vagrant habits, and had occasionally been in the almshouse ; and in the house of correction, for larceny ; and that it was at her urgent solicitation, that the agent of the brig took him to go on the whaling voyage, which is the subject of the claim in this action.

There was much evidence tending to establish these facts ; and the plaintiff also offered evidence tending to show that he had a boardingplace ; that his son did or might find a home there, if he would have stayed there ; and that the father had not consented that the son should be under the custody of the mother.

It was in evidence that on the evening of the day before the brig sailed, when she was in the stream, and the boy on board, the plaintiff forbade the defendant, Coggeshall, to take the boy to sea.

It was also in evidence that the mother of the boy, when he shipped, represented him as in a suffering condition, for want of clothing, and that in fact his clothes were in bad condition ; that the captain or owners of the brig furnished him with some clothes, and that he wore, on board, none of the clothes which were on him when he shipped.

The jury were instructed that by law a father may maintain an action against another for seducing away a minor son from his custody, protection and service ; but to maintain the action, it must appear that the son was under the care and custody of the father, and that the defendants took him from the father's employment : That if he actually suffered his son to remain un der the custody of the mother, to be supported and employed by her, he could not aver that the son was enticed from his care and custody ; that if the defendant, Coggeshall, found the boy in the care and custody of the mother, as far as she could control him, and so far as he was under the care and control of any one, then the plaintiff could not aver that the defendants seduced the son from his service.

The jury were also instructed, that if the father in fact allowed his son to go from him and employ himself as he pleased, and take his wages, it was a qualified emancipation, and the de·

fendants were not liable to this action for employing him. Also that proof of notice to Coggeshall, by the plaintiff, before the vessel sailed, that the boy was his son, and forbidding him to take him, was not alone sufficient to enable him to maintain this action ; that he must show something more, namely, that the boy was under his custody and care when he shipped ; and if upon the evidence the jury were satisfied that the boy had been, in such qualified manner, emancipated, and was not in fact under the custody and care of his father, when he shipped, the defendants would be entitled to a verdict.

The jury returned a verdict for the defendants, which was to be set aside and a new trial granted, if the foregoing instructions were incorrect.

*Coffin,* for the plaintiff.

*Battelle & E. Williams,* for the defendants.

Putnam, J. A father, without doubt, has a right to the services of his children, during their minority, while they are under his care and are maintained by him. But he may emancipate them, and permit them to receive payment for their services for their own use. And in such case, he cannot recover for the value of those services. 2 Kent Com. (3d ed.) 192, 193. 11 Verm. 260. 480. *Jenney* v. *Alden,* 12 Mass. 378 *Nightingale* v. *Withington,* 15 Mass. 275. So far as the father has emancipated, or waived his right to the services of his minor children, so far he is precluded from enforcing any legal claim for their services. If the minor, while thus permitted by his father to live away from him, under the care and protection of another, should make any reasonable contract for his services, it would not be competent for the father to avoid or annul it. But the law would, in such a case, presume that such contract was made with his assent. This would result from the principles before stated. *Whiting* v. *Earle,* 3 Pick. 202. *Morse* v. *Welton,* 6 Connect. 547.

Now in the case at bar, the plaintiff was bound to prove that, at the time when the defendants shipped his minor son, he was in his (the father's) care and custody. But the jury have negatived that fact. And well they might. For there was evidence

to prove, that for several years prior to the time when the defendants shipped the son, he had not lived with or been supported by his father ; that the father and the mother lived separate and apart from each other ; that the mother and some of her children were employed in a factory ; that the son in question had made it his home with his mother ; and that it was at her urgent solicitation, that the agent for the defendants' brig took him to go upon a whaling voyage.

The plaintiff offered evidence to contradict these facts, but it did not satisfy the jury. And the facts, which are above recited abundantly disproved the allegation in the plaintiff's writ, that his son was in the plaintiff's care and custody when the defendants shipped him. The son was in a forlorn condition at that time ; and he was rescued, by that employment, from a state of vagrancy, and put in the way of gaining an honest livelihood. But it was not obtained for him by the watchfulness and care of his father. It was the mother who cared for him in that extremity ; the mother, to whose custody and protection the plaintiff had surrendered his son, for years before.

The instruction of the chief justice, that if the father actually suffered his son to remain under the custody of the mother, to be supported and employed by her, he cannot aver that he has been enticed from his care and custody, was entirely correct. And so the position, that if the father allowed his son to go from him and employ himself as he pleased, and take his wages, it was a qualified emancipation, and that the defendants were not liable to this action for employing him, is in our opinion well supported. The jury have affirmed the facts, thus put hypothetically for their consideration, as established by the evidence in the case. The law will infer, from those facts, that the contract for the employment, so obtained by the mother, while the son was in her care, was by the consent of the father, and so, of course, not revocable by him. The notice of the plaintiff to the defendants of his relation to the boy, and the forbidding of the defendants to take him, were merely void. The contract had then been made. The boy had entered upon the service, and had received some clothes from the captain or

owners of the ship, in advance ; his own clothes being then in a bad condition. If the shipping contract had been made by the father himself, he could not then have lawfully rescinded it, without the consent of the defendants. And it was equally valid when made at the solicitation of the mother, under the circum stances of the case, as it would have been if it had been made by the father himself. [See *Steele* v. *Thacher*, Ware, 91.]

The ruling of the chief justice having been correct, the judgment is to be rendered according to the verdict.